1  BRIAN S. KABATECK, SBN 152054
   (bsk@kbklawyers.com)
2  RICHARD L. KELLNER, SBN 171416
   (rlk@kbklawyers.com)
3  KABATECK BROWN KELLNER LLP
   644 S. Figueroa Street
4  Los Angeles, California  90071
   Telephone: (213) 217-5000/ Facsimile: (213) 217-5010
5
   Berj Boyajian, SBN 60631
6  (berj@boyajianfirm.com)
   BOYAJIAN & ASSOCIATES
7  900 Wilshire Boulevard, Suite 721
   Los Angeles, California 90017
8  Telephone: (213) 689-4423/ Facsimile: (213) 689-4421
9  Mark J. Geragos, SBN 108325
   (mark@geragos.com)
10 Shelly Kaufman, SBN 100696
   (kaufman@geragos.com)
11 GERAGOS & GERAGOS, APC
   644 S. Figueroa Street
12 Los Angeles, California  90071
   Telephone: (213) 625-3900/ Facsimile: (213) 625-1600
13
   Ara Jabagchourian, SBN 205777
14 (ajabagchourian@cpmlegal.com)
   COTCHETT, PITRE & MCCARTHY
15 San Francisco Airport Office Center
   840 Malcolm Road, Suite 200
16 Burlingame, California 94010
   Telephone: (650) 697-6000/ Facsimile: (650) 697-0577
17
   Attorneys for Plaintiff and the proposed class
18
                    UNITED STATES DISTRICT COURT
19                  CENTRAL DISTRICT OF CALIFORNIA
20
21 GARBIS DAVOYAN and HRAYR          CASE NO. CV10-5636 DMG (SSx)
   TURABIAN; individually and on behalf
22 of all others similarly situated,    PLAINTIFFS' MOTION FOR ORDER
                                        VALIDATING SERVICE
23                    Plaintiffs,     Hearing
24        vs.                        Date: May 9, 2011
                                     Time: 9:30 a.m.
25 REPUBLIC OF TURKEY; THE           Courtroom: 7
   CENTRAL BANK OF THE REPUBLIC
26 OF TURKEY; T.C. ZIRAAT            Assigned for all purposes to the Honorable
   BANKASI;                          Dolly M. Gee, United States District Judge
27                    Defendants.
                                     Date Action Filed: July 29, 2010
28

PLAINTIFFS' MOTION FOR ORDER VALIDATING SERVICE (CV10-5636-DMG-SSx)

1    **TO ALL PARITES AND THEIR ATTORNEYS OF RECORD:**

2        **PLEASE TAKE NOTICE** that on May 9, 2011 at 9:30 a.m. or as soon thereafter

3    as counsel may be heard before the Honorable Dolly M. Gee, in Courtroom 7 of the

4    above entitled Court, located at 312 North Spring Street, Los Angeles, California 90012,

5    Plaintiffs Garbis Davoyan and Hrayr Turabian ("Plaintiffs") will and hereby move the

6    Court for entry of an order validating service of process on Defendant Republic of

7    Turkey.

8        Good causes exists to grant this motion because the Republic of Turkey has

9    improperly refused service despite the fact that Plaintiffs have complied with 28 U.S.C. §

10   1608 and the procedures of the Hague Convention.

11       This motion will be based on this Notice of Motion, the accompanying

12   Memorandum of Points and Authorities, the Declaration of Ara Jabagchourian, and upon

13   the pleadings and papers filed herein as well as such other matters the Court deems just

14   and appropriate in consideration of this motion.

15   Dated: April 11, 2011                    KABATECK BROWN KELLNER, LLP

16

17                                            By: _____/s/_____

18                                               Brian S. Kabateck
                                                 Richard L. Kellner
19
                                              BOYAJIAN & ASSOCIATES
20                                            Berj Boyajian

21                                            GERAGOS & GERAGOS, APC
                                              Mark J. Geragos
22                                            Shelly Kaufman

23                                            COTCHETT, PITRE & MCCARTHY
                                              Ara Jabagchourian
24
                                              *Attorneys for Plaintiffs and the Proposed Class*
25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

By this motion, Plaintiffs Garbis Davoyan and Hrayr Turabian move for an Order validating service of process with respect to Defendant Republic of Turkey ("Turkey"). Plaintiffs have complied with section 1608(a) and the procedures of the Hague Convention and thus, service on Turkey should be validated.

Under Rule 4 of the Federal Rules of Civil Procedure, "[A] foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608." Fed. R. Civ. P. 4. Section 1608(a), in turn, provides that service on a foreign state can be accomplished "by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents…" 28 U.S.C.A. § 1608. Here, service on Turkey can be accomplished through the Hague Convention, to which both the United States and Turkey are parties.

According to section 1608(a) and the procedures and requirements of the Hague Convention, Plaintiffs hired a process server to serve a translated version of the summons and complaint on the Central Authority of Turkey. [Declaration of Ara Jabagchourian ("Jabagchourian Decl."), ¶ 4.] However, in response, a Turkish judge wrote to the U.S. Department of Justice, refusing to serve the papers under Article 13 of the Hague Convention. [*Id*. at ¶ 5.] Article 13 allows a signatory nation to refuse service "only if it deems that compliance would infringe its sovereignty or security."

Plaintiffs' motion for an Order validating service on the Republic of Turkey should be granted because Plaintiffs have strictly complied with section 1608(a), by delivering a translated version of the summons and complaint to the Central Authority designated by Turkey. There is no question that Turkey is aware of this lawsuit. Turkey cannot use Article 13 to evade service and shield itself from the jurisdiction of this Court. Indeed, Turkey has availed itself from the jurisdiction of the United States District Courts by filing its own lawsuits in our Courts. *See Republic of Turkey v. OKS Partners,* 797 F. Supp. 64 (D. Mass. 1992); *Republic of Turkey v. Metropolitan Museum of Art*, 762 F.

Supp. 44 (S.D.N.Y. 1990); *Republic of Turkey v. Central Chemical Corp.,* 24 F.R.D. 132 (D. Md. 1959); *Republic of Turkey v. Zadeh,* 112 F. Supp. 933 (S.D.N.Y. 1953).  It is difficult to fathom how Turkey can now unilaterally refuse service based on "sovereign immunity under international law," especially when the acts complained of in this action are violations of human rights and international law.

Moreover, Article 13 provides that a state may refuse to comply with the Hague Convention only if compliance "would infringe its sovereignty or security."  The instant lawsuit does not infringe upon Turkey's sovereignty or security.  Indeed, Turkey has not set forth any valid reasons for refusal to comply as required by Article 13.  As such, Turkey cannot evade service and this Court should issue an order validating service based on Plaintiffs' compliance with section 1608(a).

Alternatively, Plaintiffs move for an Order permitting Plaintiffs to alternatively serve Turkey pursuant to Rule 4(f)(3), which provides that a defendant may be served "by other means not prohibited by international agreement, as the Court orders." *In re South African Apartheid Litigation*, 643 F.Supp.2d 423, 433 (S.D.N.Y. 2009).

## II.   SERVICE ON REPUBLIC OF TURKEY SHOULD BE VALIDATED

This Court should grant Plaintiffs' motion for an Order validating service on the Republic of Turkey because Plaintiffs have complied with section 1608(a) of the Federal Rules of Civil Procedure.  Moreover, Article 13 does not excuse Turkey from complying with the Hague Convention.

### A. Plaintiffs have Complied with Section 1608(a)

Federal Rules of Civil Procedure Rule 4 provides the requisite guidelines for serving a foreign state.  "A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608."  Fed. R. Civ. P. 4.  Section 1608(a), in turn, states in relevant part:

(a) Service in the courts of the United States … shall be made upon a foreign state or political subdivision of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, ...

28 U.S.C.A. § 1608.

Here, service of process on the Republic of Turkey is governed by the Hague Convention on the Service of Process Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (hereinafter "Hague Convention"), to which both the United States and the Republic of Turkey are signatories. Article 2 of the Hague Convention requires all signatory nations to designate a Central Authority whose responsibility is to accept requests of service from any other signatory nation. Once a Central Authority receives a request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law. Art. 5. The Central Authority must then provide a certificate of service that conforms to a specified model. Art. 6. A state also may consent to methods of service within its boundaries other than a request to its central authority. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988).

Plaintiffs have strictly complied with the requirements of section 1608(a) by delivering a translated version of the summons and complaint to the Central Authority of the Republic of Turkey under the Hague Convention. [Jabagchourian Decl., ¶ 4.] However, the Central Authority refused to serve the documents based on Article 13, stating that the "Republic of Turkey, as a sovereign state, enjoys sovereign immunity under intentional law." [Id. at ¶ 5 (Exhibit A).] Article 13 provides:

**PLAINTIFFS' MOTION FOR ORDER VALIDATING SERVICE (CV10-5636-DMG-SSx)**

> Where a request for service complies with the terms of the present Convention, the State addressed may refuse to comply therewith only if it deems that compliance would infringe its sovereignty or security.

Article 13 of the Hague Convention.

Plaintiffs' motion for an Order validating service on the Republic of Turkey should be granted because Plaintiffs have strictly complied with section 1608(a), by delivering a translated version of the summons and complaint to the Central Authority designated by Turkey.  The Republic of Turkey is aware of this lawsuit and cannot use Article 13 to evade service and to shield itself from the jurisdiction of this Court. Significantly, the Republic of Turkey has benefited from the jurisdiction of the United States District Courts. *See Republic of Turkey v. OKS Partners,* 797 F. Supp. 64 (D. Mass. 1992); *Republic of Turkey v. Metropolitan Museum of Art*, 762 F. Supp. 44 (S.D.N.Y. 1990); *Republic of Turkey v. Central Chemical Corp.,* 24 F.R.D. 132 (D. Md. 1959); *Republic of Turkey v. Zadeh,* 112 F. Supp. 933 (S.D.N.Y. 1953).   Now, Turkey cannot unilaterally refuse service and not cooperate with the clear procedures set forth by the Hague Convention based on "sovereign immunity under international law."  This is especially true in light of the fact that the acts complained of in this action are violations of human rights and international law.  Thus, this Court should issue an order validating service based on Plaintiffs' compliance with section 1608(a).

District Courts in the United States have validated service by mail, including but not limited to Federal Express and by DHL courier, as long as the form of service in question is not expressly prohibited by the foreign country.  See *Stiefel Laboratories, Inc. v. Galenium USA, LLC*, 05-23108-CIV, 2006 WL 1548006 (S.D. Fla. Apr. 11, 2006); *Power Integrations, Inc. v. Sys. Gen. Corp.*, C 04-02581 JSW, 2004 WL 2806168 (N.D. Cal. Dec. 7, 2004); *Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 430 (D. Del. 1999).  In fact, courts have significant discretion in determining the propriety of service on a foreign defendant, specifically a defendant in a Hague signatory country. Where the signatory has "refused to cooperate for substantive reasons," courts are

1    authorized to approve alternative means of service pursuant to Rule 4(f)(3).  *In re Potash*

2    *Antitrust Litig.*, 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009), citing the advisory committee's

3    note (1993 Amendments) of Fed.R.Civ.P. 4(f)(1).

4           In validating service of process, federal courts have not only allowed for various

5    methods of service, but also, have continually held that service through "internationally

6    agreed means" is not the only form of service of process.  More importantly, courts have

7    even gone as far to hold that the plaintiff is not required to initially attempt notice per the

8    Hague Convention and then resort to an alternative form; if the plaintiff can show that

9    service as prescribed by the Hague Convention would be "potentially fruitless," then the

10   court can direct the plaintiff to attempt an alternate means as long as it does not violate

11   any international agreement nor is prohibited by the signatory country in question.  *In re*

12   *LDK Solar Sec. Litig.*, C 07-05182 WHA, 2008 WL 2415186 (N.D. Cal. June 12, 2008)

13   ("Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, and certainly

14   Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after

15   attempting service of process by other means.").

16          Here, Plaintiffs have complied with section 1608(a), but the Republic of Turkey is

17   refusing to cooperate.  Nevertheless, there is no question that the Republic of Turkey is

18   aware of this lawsuit.  For instance, the Republic of Turkey's Central Bank is a party to

19   the instant action and has been properly served.  Moreover, Plaintiffs have attempted

20   service through the Hague Convention, and the Republic of Turkey's Central Authority

21   has received the summons and complaint.  Plaintiffs have also sent, through registered

22   mail and a process server, the summons and complaint to the Turkish embassy in

23   Washington D.C. [Jabagchourian Decl., ¶¶ 2, 3.]

24          Under the present circumstances, the Court's intervention is necessary to

25   effectuate service on Turkey.  Defendant's transparent efforts to evade service cannot be

26   permitted.

27   ///

28   ///

**B.  Article 13 of the Hague Convention Does Not Apply to Excuse Turkey from Complying**

Turkey refused to comply with the procedures set forth by the Hague Convention based on Article 13, which provides: "Where a request for service complies with the terms of the present Convention, the State addressed may refuse to comply therewith **only if it deems that compliance would infringe its sovereignty or security**."   Article 13 of the Hague Convention (emphasis added).

Here, the instant lawsuit in no way infringes upon Turkey's sovereignty or security.  This is a civil action on behalf of the named Plaintiffs and a class of all Armenians and former Turkish citizens, who seek to be paid for lost rents from property owned by them.  A civil action for monetary damages has no bearing on Turkey's sovereignty or security.  Moreover, the allegations in the instant action arise from events that occurred in the 1900s, which cannot possibly affect Turkey's current sovereignty.  Thus, Article 13 does not apply.

Moreover, Article 13 further provides: "The Central Authority shall, in case of refusal, promptly inform the applicant and state the reasons for refusal."  The only reason Turkey states for its refusal to comply is: "Republic of Turkey, as a sovereign state, enjoys sovereign immunity under international law."  [Id. at ¶ 5 (Exhibit A).] Turkey has not complied with Article 13 since the "reason" it provided is not supported by Article 13, which permits that a state to refuse to comply "only if it deems that compliance would **infringe its sovereignty or security**."

In any event, Turkey is not immune from the jurisdiction of this Court pursuant to 28 U.S.C. § 1605(a)(3), since it illegally confiscated money and property and distributed it to its agencies and instrumentalities that provide services to or are engaged in commercial activity in the United States.

Because Turkey has not set forth any valid reasons for refusal to comply with the Hague Convention under Article 13, the state cannot evade service and the jurisdiction of

1  this Court.  Thus, this Court should grant Plaintiffs' motion for an order validating

2  service of process on the Republic of Turkey.

3  **III.   ALTERNATIVELY, PLAINTIFFS MOVE FOR AN ORDER**

4  **PERMITTING AN ALTERNATIVE METHOD OF SERVICE PURSUANT**

5  **TO FRCP RULE 4(f)(3)**

6      To the extent that this Court believes that the Republic of Turkey has not been

7  served, Plaintiffs seek an order permitting an alternative method of service.  The Turkish

8  Central Authority's unilateral refusal to serve the Republic of Turkey pursuant to the

9  Hague Convention does not prevent this Court from permitting alternative means of

10  service.  Through the rules of civil procedure, this Court can fashion service that is

11  reasonable based on the refusal to effectuate service through an internationally agreed

12  means.  Accordingly, Plaintiffs request this Court to permit service through a response by

13  a letter rogatory or letter of request issued by the Court Clerk, through a mailing by the

14  Clerk of the Court with a signed receipt by the Republic of Turkey, through mail service

15  by the Court Clerk to the Republic of Turkey's embassy in Washington D.C., or through

16  publication.

17      Pursuant to the Federal Rules of Civil Procedure, Rule 4(f), the Legislature has set

18  out several means of service for any entity located in a foreign country.  Rule 4(f) sets

19  out three general ways to serve an individual in a foreign country: (1) any internationally

20  agreed means such as the Hague Convention; (2) through a "method that is reasonably

21  calculated to give notice"; and (3) "by other means not prohibited by international

22  agreement, as the court orders."  Fed.R.Civ.Proc. Rule 4(f).

23      In *In re South African Apartheid Litigation*, 643 F.Supp.2d 423 (SDNY 2009), the

24  court held that "[e]ven when nations have expressly agreed on a means of service, Rule

25  4(f)(3) provides that a defendant may be served 'by other means not prohibited by

26  international agreement, as the court orders.'"  *Id*. at 433.  "Court-directed service is

27  particularly appropriate where a signatory to the Hague Service Convention has refused

28

1  to cooperate for substantive reasons." *Ibid*.; quoting *Artisa Records LLC v. Media Servs.*
2  *LLC*, 2008 U.S.Dist. LEXIS 16485 (SDNY Feb. 25, 2008).
3      "Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other
4  subsections; it stands independently on equal footing." *Rio Props, Inc. v. Rio Int'l*
5  *Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). The Advisory Committee Note to the
6  1993 Amendments to subdivision (f) indicates that Rule 4(f)(3) is especially appropriate
7  on those occasions when a signatory state of the Hague Convention refuses to cooperate
8  for substantive reasons, "resort may be had to the provision set forth in subdivision
9  (f)(3)." Fed.R.Civ.Proc. Rule 4, (Advisory Committee notes to the 1993 Amendments to
10  subdivision (f)); see also *Nuance Communs., Inc. v. Abbyy Software House*, 626 F.3d
11  1222, 1239 (Fed.Cir 2010).
12      Rule 4(f)(2) sets out various alternatives to serve an entity in a foreign country.
13  These include letter of requests or through mailing issued by the Court Clerk.
14  Fed.R.Civ.Proc. Rule 4(f)(2)(B) and (C). Courts have allowed service by email and
15  substitute service through mail to a party's U.S. office and on defendant's California
16  based attorney. *Rio Propos*., 284 F.3d at 1013; see also *Brockmeyer v. May*, 383 F.3d
17  798, 805 (9th Cir. 2004).
18      Although not clear whether current defense counsel for the Central Bank of the
19  Republic of Turkey and T.C. Ziraat Bankasi will represent the Republic of Turkey, it is
20  clear that the Republic of Turkey is aware that it is named as a party in this lawsuit. First,
21  the Republic of Turkey's Central Bank is a party and has been properly served. Second,
22  Plaintiffs have attempted service through the Hague Convention, and the Republic of
23  Turkey's own Central Authority designated to receive service materials has in fact,
24  received the summons and complaint. Third, Plaintiffs have sent, through both registered
25  mail and a process server, the service papers to the Turkish embassy in Washington D.C.
26  However, the Republic of Turkey has rejected both forms of service.
27      At this point, Plaintiffs request that service be effectuated through a cost effective
28  manner, such as a mailing by the Court Clerk to both the Republic of Turkey and to the

— 10 —

1  defendant Central Bank's current counsel to have service deemed effectuated.  Plaintiffs

2  are concerned about alternative service through a Turkish publication as we anticipate

3  severe resistance by such outlets to do so.  Plaintiffs are also open to other alternatives of

4  service as the Court suggests.

5  **IV.**    **CONCLUSION**

6          For the reasons set forth above, Plaintiffs respectfully requests that this Court

7  grant this motion, and enter an Order validating service of process on Defendant Republic

8  of Turkey; or alternatively, permitting Plaintiffs to effect alternative service on Defendant

9  Republic of Turkey in the manner requested in Plaintiffs' motion.

10

11  DATED: April 11, 2011                    KABATECK BROWN KELLNER LLP

12

13                                          By _____/s/_____
                                            Brian S. Kabateck
14                                          Richard L. Kellner

15                                          BOYAJIAN & ASSOCIATES
                                            Berj Boyajian
16

17                                          GERAGOS & GERAGOS, APC
                                            Mark J. Geragos
18                                          Shelly Kaufman

19                                          COTCHETT, PITRE & MCCARTHY
                                            Ara Jabagchourian
20
                                            *Attorneys for Plaintiffs and the Proposed Class*
21

22

23

24

25

26

27

28

**PLAINTIFFS' MOTION FOR ORDER VALIDATING SERVICE (CV10-5636-DMG-SSx)**