1  NEIL M. SOLTMAN (SBN 67617)
   nsoltman@mayerbrown.com
2  CHRISTOPHER P. MURPHY (SBN 120048)
   cmurphy@mayerbrown.com
3  MATTHEW H. MARMOLEJO (SBN 242964)
   mmarmolejo@mayerbrown.com
4  MAYER BROWN LLP
   350 South Grand Avenue
5  Los Angeles CA 90071-1503
   Tel:   (213) 229-9500
6  Fax:  (213) 625-0248

7  DAVID SALTZMAN (admitted *pro hac vice*)
   dsaltzman@turklaw.net
8  SALTZMAN & EVINCH, PC
   655 15th Street N.W.
9  Washington, D.C. 20005
   Tel:   (202) 637-9877
10 Fax:  (202) 637-9876

11 Attorneys for Defendants
   CENTRAL BANK OF THE REPUBLIC OF
12 TURKEY and T.C. ZIRAAT BANKASI

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARBIS DAVOYAN and HRAYR TURABIAN, individually on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>REPUBLIC OF TURKEY; THE CENTRAL BANK OF THE REPUBLIC OF TURKEY; T.C. ZIRAAT BANKASI,<br><br>Defendants. | NO. CV 10-5636 DMG (SSx)<br><br>**NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS OF DEFENDANTS THE CENTRAL BANK OF THE REPUBLIC OF TURKEY AND T.C. ZIRAAT BANKASI**<br><br>[Fed. R. Civ. P. 12(b)(1) & 12(c)]<br><br>Date:   December 19, 2011<br>Time:   9:30 a.m.<br>Place: Courtroom of the Hon. Dolly M. Gee, United States District Judge |

## NOTICE OF SUPPLEMENTAL AUTHORITY

Defendants the Central Bank of the Republic of Turkey and T.C. Ziraat Bankasi (jointly, the "Bank Defendants") provide the Court with the following supplemental authorities relevant to the Bank Defendants' pending Motion to Dismiss and Motion for Judgment on the Pleadings:

1. *Movsesian v. Victoria Versicherung AG*, No. 07–56722, --- F.3d ----, 2012 WL 589457 (9th Cir. Feb. 23, 2012) (en banc) (attached as Exhibit A).

Plaintiffs' Complaint purports to rely on California Code of Civil Procedure § 354.4 presumably to suggest that the century-old claims they assert should not be time barred. Compl. ¶ 55. On February 23, 2012, a unanimous Ninth Circuit, sitting en banc, held that Section 354.4 was preempted by the foreign affairs doctrine because it impermissibly established "a particular foreign policy for California—one that decries the actions of the Ottoman Empire and seeks to provide redress for 'Armenian Genocide victim[s]' by subjecting foreign insurance companies to lawsuits in California." 2012 WL 589457 at *8. After concluding that Section 354.4 was preempted because it "does not concern an area of traditional state responsibility and intrudes on the field of foreign affairs entrusted exclusively to the federal government," the Ninth Circuit remanded the matter "with instructions to dismiss all claims revived by that statute." *Id.* at *9.

Further, *Movsesian* squarely rejects Plaintiffs' claims that "[t]here is no applicable federal preemption in this matter," Opp. Mot. Dismiss at 13:27, and that this case "will not require the [C]ourt to make [a] policy determination clearly for nonjudicial discretion." *Id.* at 14:20-21. The foreign policy implications underlying *Movsesian* are equally applicable here. As *Movsesian* explained, an analysis under C.C.P. § 354.4 may have required courts "to decide whether the policyholder 'escaped to avoid persecution,' . . . which in turn would require a highly politicized inquiry into the conduct of a foreign nation." *Movsesian*, 2012 WL 589457 at *8. That is precisely what Plaintiffs would have this Court do in

adjudicating their claims. Moreover, *Movsesian* also underscored the controversial and highly sensitive nature of the historical events at the core of Plaintiffs' claims: "The passage of nearly a century since the events in question has not extinguished the potential effect of section 354.4 on foreign affairs. On the contrary, Turkey expresses great concern over the issue, which continues to be a hotly contested matter of foreign policy around the world." *Id.*

2.  ***Jurisdictional Immunities of the State (Germany v. Italy: Greece Intervening)*, 2012 I.C.J. --- (Feb. 5, 2012) (attached as Exhibit B).**

A central component of Plaintiffs' claim is that, notwithstanding the doctrine of foreign sovereign immunity, "a substantial body of international law . . . holds that foreign states can be held liable for wrongs perpetuated against its nationals." Opp. Mot. Dismiss at 7:21-23. Plaintiffs support this contention by pointing to decisions of various international tribunals, including a 1970 decision from the International Court of Justice, that they claim have adopted this view. *See, e.g., id.* at 8:12-9:2 (citing *Barcelona Traction, Light & Power Co. Ltd. (Belgium v. Spain) (New Application: 1962)*, 1970 I.C.J. 3 (Feb. 5)).

The International Court of Justice in *Jurisdictional Immunities of the State (Germany v. Italy: Greece Intervening)* (Feb. 5, 2012) removed any remaining claim that Plaintiffs can look to international law for support. The impetus for *Jurisdictional Immunities* was a series of judgments issued by Italian and Greek courts against the Federal Republic of Germany arising from actions by German forces during the Second World War. *Jurisdictional Immunities* ¶¶ 27-36. The Italian courts rejected German claims to sovereign immunity. *See id.* ¶¶ 27, 29. After attempts to enforce a Greek judgment in Greece and Germany proved unsuccessful, an Italian court ruled that the Greek judgment was enforceable in Italy, *id.* ¶ 34, and preliminarily allowed the Greek claimants to attach Italian property owned by the German state. *Id.* ¶ 36.

Germany instituted proceedings with the ICJ, contending that Italy, "through

its judicial practice [described above] . . . 'has failed to respect the jurisdictional immunity which . . . Germany enjoys under international law.'" *Id.* ¶ 1. In upholding Germany's right to sovereign immunity, the ICJ reached four different holdings that bear on the facts here (assuming only for the purposes of addressing Plaintiffs' suggestion that the decisions of international tribunals, and not binding Ninth Circuit precedent, should control the Court's decision).

First, the ICJ concluded that "under customary international law as it presently stands, a State is not deprived of immunity by reason of the fact that it is accused of serious violations of international human rights law . . . ." *Id.* ¶ 91. This directly weighs against Plaintiffs' suggestion to this Court that "[t]he state of international law defeats Defendants' assertion of sovereign immunity." Opp. Mot. Dismiss at 10:13.[1]

Second, the ICJ held that a determination of immunity is not affected by whether a violation of *jus cogens* norms is alleged. *Jurisdictional Immunities* ¶ 97 ("[T]he Court concludes that even on the assumption that the proceedings in the Italian courts involved violations of *jus cogens* rules, the applicability of the customary international law on State immunity was not affected."). The ICJ explained:

> The two sets of rules [i.e., sovereign immunity law and *jus cogens* norms] address different matters. The rules of State immunity are procedural in character and are confined to determining whether or not the courts of one State may exercise jurisdiction in respect of another State. They do not bear upon the question whether or not the conduct in respect of which the proceedings are brought was lawful or unlawful. . . . [R]ecognizing the immunity of a foreign State in accordance with customary international law does not amount to recognizing as lawful a situation created by the breach of

---

[1] None of the international decisions cited by Plaintiffs quarrel with this notion. *Barcelona Traction*, for example, did not even consider a claim of sovereign immunity. And in *James and Others v. United Kingdom*, App. No. 8793/79, 8 Eur. H.R. Rep. 123 (1986), the European Court of Human Rights held, contrary to Plaintiffs' insinuation, that "purely as a matter of general international law, the principles in question apply solely to non-nationals." *Contra* Opp. Mot. Dismiss at 8:18-21.

a *jus cogens* rule. . . .

*Id.* ¶ 93.[2]

Third, the ICJ rejected Italy's argument that the denial of German State immunity was justified "because all other attempts to secure compensation for the various groups of victims involved in the Italian proceedings had failed." *Id.* ¶ 98. The ICJ explained that it could find nothing in international law that "makes the entitlement of a State to immunity dependent upon the existence of effective alternative means of securing redress." *Id.* ¶ 101. But that is what Plaintiffs suggest when they claim that they "have no redress in the [Republic of Turkey's] courts." Compl. ¶ 49.

Fourth and finally, the ICJ concluded "that the action of the Italian courts in denying Germany the immunity to which the Court has held it was entitled under customary international law constitutes a breach of the obligations owed by the Italian State to Germany." *Jurisdictional Immunities* ¶ 107.

As the Bank Defendants have pointed out, the decisional law of international tribunals is not precedent that this Court is required, or even permitted, to follow. *See* Reply Supp. Mot to Dismiss at 3:22-5:28. Nonetheless, *Jurisdictional Immunities* is a significant expression of the general principles of state immunity in international law, which clearly rejects Plaintiffs' view.

///
///
///
///

---

[2] The Court further noted that the argument advanced by Italy "about the effect of *jus cogens* displacing the law of State immunity" had been rejected by a number of different courts, including those of the United Kingdom, Canada, Poland, New Zealand, Greece, and the European Court of Human Rights. *Jurisdictional Immunities* ¶ 96 ("[T]he judgments of the Italian courts which are the subject of the present proceedings are the only decisions of national courts to have accepted the reasoning" advanced by Italy as to the supposed effect of *jus cogens* norms).

## CONCLUSION

For the reasons stated in the Bank Defendants' moving, reply, and supplemental papers, and in their Request for Judicial Notice, the Court should dismiss this action pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction based on sovereign immunity. Alternatively, the Court should grant the Bank Defendants' Motion for Judgment on the Pleadings.

Dated: March 1, 2012

MAYER BROWN LLP
NEIL M. SOLTMAN
CHRISTOPHER P. MURPHY
MATTHEW H. MARMOLEJO


By: s/ Matthew H. Marmolejo
Matthew H. Marmolejo

SALTZMAN & EVINCH, PC


By: s/ David Saltzman
David Saltzman

Attorneys for Defendants
CENTRAL BANK OF THE REPUBLIC OF TURKEY AND T.C. ZIRAAT BANKASI