1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3                    ---

4      HONORABLE DOLLY M. GEE, JUDGE PRESIDING

5                    ---

6

7

8   **GARBIS DAVOYAN,**                    )
    individually on behalf of             )
9   all others similarly situated,        )
                                          )
10                                         )
                                          )
11              Plaintiffs,               )
                                          )No. 10-5636DMG
12        VS                               )
                                          )
13  **REPUBLIC OF TURKEY,** et al          )
                                          )
14                                         )
                Defendants.               )
15  _____)

16

17          Reporter's Transcript of Proceedings
                     Motion Hearing
18              Los Angeles, California
               MONDAY, DECEMBER 6, 2010
19

20

21

22
            Anne Kielwasser, RPR No. 50901
23          Federal Official Court Reporter
           312 North Spring Street, Room 432
24          Los Angeles, California 90012
               Phone: (213) 894-2969
25            anne.kielwasser@gmail.com
                AKcourtreporting.com

1                                A P P E A R A N C E S

2

3

**ON BEHALF OF THE PLAINTIFFS:**

4

**Alfredo Torrijos**
5    Kabateck Brown Kellner LLP
     644 South Figueroa Street
6    Los Angeles, CA 90017
     213-217-5000
7    Fax:  213-217-5010

8

**ON BEHALF OF THE DEFENDANTS:**

9

**Neil Soltman**
10   **Matthew Henry Marmolejo**
     Mayer Brown LLP
11   350 South Grand Avenue 25th Floor
     Los Angeles, CA 90071
12   213-229-9500
     Fax:  213-625-0248
13   Email:  Mmarmolejo@mayerbrown.com

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    MONDAY, DECEMBER 6, 2010                    10:00 A.M.

 2                           ~ ~ ~

 3                    P R O C E E D I N G S

 4                           ~ ~ ~

 5              COURT CLERK:  Civil Case 10-5636.  Garbis Danoyan,

 6    et al, versus Republic of Turkey, et al.

 7              MR. SOLTMAN:  Good morning, Your Honor.  Neil

 8    Soltman for moving defendants.

 9              THE COURT:  Good morning.

10              MR. MARMOLEJO:  Your Honor, Matthew Marmolejo of

11    Mayer Brown for defendants as well.

12              THE COURT:  Good morning.

13              MR. TORRIJOS:  Good morning, Your Honor.  Alfredo

14    Torrijos, with the law firm of Kabateck Brown Kellner on

15    behalf of the plaintiffs.

16              THE COURT:  Good morning.

17                   I assume that both sides have had an

18    opportunity to review the tentative ruling?

19              MR. SOLTMAN:  We have, Your Honor.

20              THE COURT:  All right, before I start, I would

21    like to disclose on the record that I do know Joseph

22    Cotchett, who I believe is a principal in one of the law

23    firms involved in this case; but I don't think that's a basis

24    for me to recuse myself.  I only am acquainted with him.  I

25    don't socialize with him.
```

```
 1              MR. SOLTMAN:  Thank you, Your Honor.  We
 2    appreciate that.
 3                   I think, Your Honor, that the real crux of
 4    the matter is on page 11 of the Court's tentative in the
 5    paragraph -- from line 19 through 25, in which the Court
 6    disagrees with our interpretation of the scope of Straub, and
 7    I think when we get to that, that's when we get to where our
 8    paths diverge.
 9              THE COURT:  Exactly.
10              MR. SOLTMAN:  And our reading of Straub obviously
11    is contrary, and I think a clear -- I agree that there is no
12    clear Ninth Circuit case on point.  So, we're dealing some
13    of, with uncertain territory.  And the only thing I would
14    say, Your Honor, is, I don't think there is really much to
15    add to what's already in the papers on that point.
16                   I think a clearer reading or an easier
17    reading of Straub is that Straub appears to make the
18    distinction that we were arguing for between when substantial
19    compliance is permitted and when substantial compliance is
20    not permitted.
21                   And I think the argument in favor of
22    substantial compliance being permitted is, in my view,
23    somewhat tentative, that is, it requires a couple of steps in
24    inferring what the Court must have been thinking because it
25    cited in Garretson versus what the Court actually said it was
```

1    thinking in the description that it gave in Straub where it

2    very clearly divided service from B2 from service for B3.

3             THE COURT:  Why do you assert there should be a

4    difference between how B3 and B2 are analyzed?

5             MR. SOLTMAN:  Well, I think the difference is

6    that, if you look at the way the statute runs, B1, B2, B3,

7    there is a sort of a cascade or waterfall effect; and as you

8    come down, or as you go up in the numbers from B1 to B2 from

9    B2 to B3, the requirements get somewhat less strict, that the

10   requirement under B3, where there can be substantial

11   compliance, is what happens if you don't fall within B1 or

12   B2.

13             I think that structure, at least from the

14   pure language of the statute and how the Ninth Circuit

15   approached it in Straub seems to suggest, to us at least,

16   that there is a very strict interpretation for B1.  There

17   must be a specific agreement, that for B2, the agreement,

18   there must be a particular managing agent or agent authorized

19   to accept service of process.

20             It seems to me inconsistent to require

21   specifically in the statute that you serve particular people,

22   or people by particular designated titles and then say:  No,

23   you don't need to do that, because substantial compliance is

24   enough.

25             I don't think there is any argument here

1    that -- and I don't find the Court's -- I don't believe the

2    Court's tentative suggests it, and I don't believe the

3    plaintiffs really suggest it, that any of the people served

4    fulfill the definitions in B2; that is, there is no evidence

5    that any of them is a managing agent or an agent authorized

6    to accept service of process.

7                    It seems to me we do violence in the sense of

8    pure statutory interpretation.  If the legislature has said:

9    B2 applies and you must have service to a particular people;

10   and then to say, in this case, those people, in effect, are

11   not served because there is no evidence that the people who

12   were served fit those roles, to say:  But never mind,

13   substantial compliance serving anyone is -- in the office --

14   is okay.

15                   And I think, when you step back a second,

16   looking at that, just trying to take a strict statutory

17   interpretation argument seems to me the statutory

18   interpretation is, Congress was clear, for B2, you must serve

19   somebody who fits Mold A, Mold B or Mold C; and if they do

20   not, if you then say -- and you can serve anybody else,

21   you've just done, one has done violence to what the language

22   of the statute itself says.

23                   THE COURT:  If that were true, then the whole

24   concept of substantial compliance would be doing violence to

25   the statute.

```
 1              MR. SOLTMAN:  Well, I think in the context -- I
 2    think there is a specific context here, which is, I agree
 3    there are lots of times in which substantial compliance
 4    particularly with regard to service is permitted.  It's
 5    permitted under Rule 4, and we don't argue to the contrary.
 6              I think when it comes to dealing with FSIA
 7    issues, where you have foreign entities and foreign entities
 8    that are owned by foreign governments, that it's a fair
 9    interpretation that Congress intended there to be stricter
10    compliance when you're dealing with issues which could relate
11    to the foreign affairs of the United States, when you're
12    dealing with issues that could, perhaps, you know, cause
13    concern in the economic ministry of a foreign nation, such as
14    Turkey.  In that circumstance -- not in a normal
15    circumstance, but in that circumstance, seems to me if
16    Congress says:  We want there to be service on these specific
17    people, that we ought to take Congress at its word.
18              There ought to be service on these specific
19    people because the judgement as to whether or not substantial
20    compliance is okay versus not okay is really a question, I
21    think, that gets to a core congressional function or a core
22    national function about what do we do when it comes to
23    dealing with foreign entities that are owned by foreign
24    governments?
25              The whole purpose of the FSIA was obviously
```

1    to deal with them in some different manner than we deal with

2    domestic entities; and once, I think, you're in that

3    ballpark, then it requires, even though I would agree that in

4    many circumstances substantial compliance might be

5    sufficient, I think in this particular circumstance, we ought

6    to take Congress at its word and say if you are not a

7    managing agent or general agent or agent authorized to accept

8    service of process, then you're not; because otherwise we

9    say:  Well, Congress said that, but it's okay, it doesn't

10   have to be.

11              I think it has to be.

12              THE COURT:  I think it would be important if there

13   had not actually been notice given of the action.

14              MR. SOLTMAN:  Well, I think this again gets to the

15   same question of the dignity or the formality with which

16   Congress deals with questions relating to foreign

17   governments.  That is, I agree in the normal circumstance you

18   have actual notice.  We're not claiming there is not actual

19   notice.  Obviously I'm here making an argument.  There is no

20   issue about that.

21              But I think in dealing with foreign

22   affairs -- and this case deals with foreign affairs at a very

23   deep level -- in dealing with foreign affairs, there is a

24   level of formality between governments and government-owned

25   entities which is different, and it may be formalistic at

1    times, and it may be what we wouldn't normally do; but the

2    fact is, it involves matters of foreign affairs and

3    diplomacy, and in involving matters of foreign affairs and

4    diplomacy, there are formalities that are involved that we

5    need to honor.

6            If you look at the diplomatic note that the

7    Turkish counselor sends to the State Department, obviously

8    that is not the normal kind of communication one would have.

9    It is wrapped in particular ways that governments communicate

10   to one another relating to the governments themselves and

11   their entities.

12           And I think in that circumstance, I think

13   when you look at what the underlying context of an FSIA

14   argument is, that in those circumstances, there ought to be

15   compliance with formality even though there is actual notice;

16   and there ought to be not because it may make any difference,

17   it may or may not, but there ought to be because:  A, I think

18   a fair reading that the Congress has said there is a

19   difference, that's No. 1; and if Congress has said that,

20   then, I think, obviously, we're all required to comply with

21   that.

22           But even aside from that, if there is a

23   debatable issue, if it's 55/45 or 60/40, that's a judgment

24   that the federal government or a Congress was permitted to

25   make in deciding how to deal with foreign entities that are

1    owned by foreign governments.

2              Turkey is a vitally important colleague in

3    wartime here.  That is, there are very close relationships

4    between the United States government and the Turkish

5    government relating to how Afghanistan and Iraq are supplied,

6    where you're able to fly over and things of that sort.

7              In that context, I think, discretion is the

8    better part of valor; and if there is any doubt at all, we

9    ought to err on the side of the formality that Congress, at

10   least in our view, Congress seemed to impose here, even

11   though it may not make a difference in the ordinary course of

12   events, it may well make a difference, or Congress thought it

13   may well make a difference when it comes to dealing with

14   issues relating to foreign governments and foreign affairs.

15        THE COURT:  Well, I would note that we're dealing

16   with Central Bank and Surat here at the moment.

17        MR. SOLTMAN:  Yes.

18        THE COURT:  And if I read your papers correctly,

19   you're of the view that there are no officers managing or

20   general agents of these two entities in the United States at

21   all.

22        MR. SOLTMAN:  I think that is true with regard to

23   the Central Bank.  I don't think that's true with regard to

24   Surat.  I think we said that specifically with regard to the

25   Central Bank.  We did not say that with regard to Surat.

```
1    There is -- I believe there is one with regard to Surat.

2                   But the issue here is, of course, they can

3    just serve pursuant to the Hague Convention, and so it's not

4    like there's a way that we can play some magic game and there

5    isn't service; but I think, if you look at the -- put the

6    Hague Convention in the context of the issues that we're

7    talking about, the Hague Convention is in agreement between

8    nations.

9                   Obviously, the house service will normally be

10   effectuated, and in this particular circumstance saying that

11   entities that are entirely owned or entirely controlled by a

12   foreign government, as Central Bank isn't as Surat is, in

13   that circumstance, to say that the way the governments have

14   gotten together and agreed that service of lawsuits should be

15   effectuated is something that we can give credence to.  And

16   we can do that.

17                   It's not that anybody is going to evade

18   service; it's that there may be a circumstance in which

19   foreign nations get concerned about what could be interpreted

20   as efforts to do away with the protections they have under

21   the Hague Service Convention, which are quite detailed and

22   quite precise and vary from one country to the other.

23                   And in that circumstance, I think it would be

24   fair to say everybody is going to be served.  They're going

25   to have to serve Turkey in that way.  The case is the Court's
```

 1    order, tentative order indicates isn't really going to be

 2    able to get anywhere until the Republic of Turkey is

 3    involved; and in that circumstance, it seems to me very

 4    little is gained by determining that service was properly

 5    effectuated here, because we know we're not going to move

 6    forward until at least the 90-day period after the stay.

 7              Presumably, the plaintiffs will try to serve

 8    the Republic of Turkey in that period.  They could also serve

 9    the Central Bank and Surat Bank in that same period.  It will

10    make no difference, whatsoever; except we will have taken a

11    very clear path of deference to what, I think -- and I

12    realize the Court might disagree -- but what I think is

13    Congressional language that suggests a particular way of

14    going about this and won't have any effect on anybody because

15    obviously they can serve them under the Hague Service

16    Convention; and once you're at that point, it seems to me,

17    nothing is gained by appearing to do away with some of the

18    statutory protections that could -- I won't say that it does

19    but could upset a foreign nation which is why presumably

20    Congress is very careful as to how we created the waterfall

21    affect in B1, B2 and B3, and what have we accomplished at

22    that point?  We haven't accomplished anything --

23              THE COURT:  Do you have any cases that refer to

24    this cascading affect that you're talking about?

25              MR. SOLTMAN:  Yes, I mean, there are cases we

```
 1    cited that say if you don't satisfy B1 -- you have to satisfy
 2    B1 if there's a B1 agreement --
 3              THE COURT:  No, I understand that.
 4              MR. SOLTMAN:  Okay.
 5              THE COURT:  But there is an increasingly more
 6    stringent interpretation of the language -- or less
 7    stringent --
 8              MR. SOLTMAN:  Interpretation --
 9              THE COURT: -- interpretation of the language.
10              MR. SOLTMAN:  I think that the cases that say:
11    You first go to B1; and if you don't satisfy B1, then you go
12    to B2; and if you can't satisfy B2, you don't go to B3, are
13    the cases that, in effect, say that; that is, they say you
14    must go through each of the steps.
15                   Going through each of the steps wouldn't
16    matter if you can conflate the substantial compliance that's
17    permitted under B3 with service under B2.
18                   I think we all agree that service under B2 is
19    what we're talking about here; and if we're talking about
20    service under B2, then we have, I think, if we make the
21    distinction -- if we don't make the distinction between how
22    you would do it under B2 and how you would do it under B3,
23    we've conflated those two; and if you conflate those two,
24    you've done away with the distinction that several cases talk
25    about:  You must go first to one, and then to two, and only
```

1    to three if you don't go to two.

2                    And it seems to me, the statute doesn't

3    really make any sense, I mean, may be formalistic, but you

4    have a structure and a purpose to it, which is very

5    purposeful.

6                    And once we say:  It's the same on three as

7    it is for two, we've said there's no difference between two

8    and three; and I think, whether it's wise or not, isn't our

9    decision to make, it's a Congressional decision to make, and

10   I think Congress has made that decision.

11                   I think in this, you know, circumstance, when

12   it comes to foreign nations, we ought to be more careful to

13   adhere to that than we would in other circumstances.

14                   I think there are cases not exactly saying

15   what I'm saying, but I think supporting that proposition that

16   there is a waterfall affect, you know, there is an order in

17   the statute in all of that.

18                   So, I think that is consistent with the

19   broader view of what the FSIA intends to do, and I think

20   particularly, given then in this circumstance, it really

21   won't make any difference, we ought to be careful.

22                   THE COURT:  Actually, I think in this circumstance

23   it doesn't really make a difference either way in the sense

24   that whether I rule one way or the other, these two

25   defendants either will have been served and are here, and

```
 1    obviously you're here, or we'll have to do it again and
 2    you'll be here again.
 3            MR. SOLTMAN:  No, that's absolutely correct.  I
 4    don't disagree with that.
 5            I think what I'm saying is, because it
 6    doesn't make a difference either way, then, it seems to me,
 7    what we believe to be the Congressional intent that one must
 8    go carefully is something that ought to be adhered to,
 9    because why would we -- even if you think it's a close case,
10    why would we ignore what at least is suggestive of a
11    particular Congressional intent just because it doesn't make
12    any difference.  If it doesn't make any difference, we
13    certainly ought to go out of our way to comply with what the
14    Congress seems to have dictated in the language of the
15    statute.
16            THE COURT:  All right.  I understand your
17    argument.
18            MR. SOLTMAN:  Thank you.
19            THE COURT:  Thank you.
20            MR. TORRIJOS:  Your Honor, if I may just very
21    briefly address, I think -- which is the salient point, which
22    is really, the policy rationales underlying this, and it
23    really doesn't make a difference here in this case here now.
24            And I think that all the policy rationales
25    outlined by counsel, really, in this case evaporate because
```

```
 1    of the stay.  This would be a very different case had it been
 2    that Your Honor's decision today would determine whether
 3    we're moving forward or not; and, in fact, it doesn't; and as
 4    you astutely pointed out a minute ago, it doesn't make a
 5    difference either way.
 6                    Now, I think requiring the plaintiffs to
 7    invoke the Hague Convention on the two defendants that have
 8    actual notice and are presently before the Court and to incur
 9    the expense of serving those defendants in their home
10    countries is unnecessary given that reality.
11                    The plaintiffs are presently in the middle of
12    attempting to serve the Republic of Turkey.  We hopefully
13    will be able to get them served within the 90-day stay that
14    Your Honor has suggested; and in that case, we can move
15    forward in a way that is sufficient and in a way that really
16    does no harm at all to any of the policy rationales that
17    counsel was addressing in his oral argument.
18                    My only other point with regard to the
19    cascading of the sections within 1608(b) is, that section --
20    subsection 2, actually, we keep forgetting that it has a
21    disjunctive in there, because it says:  Or in accordance with
22    applicable international convention.  So, it doesn't list
23    specific individuals simply as the only method of providing
24    service under that statute.
25                    And as Your Honor has noted in your
```

```
 1    tentative, with regard to Central Bank at least, B2 would be
 2    completely unavailable to us if it were not for that
 3    disjunctive phrase in there; or, alternatively, then we would
 4    go to B3 in substantial compliance would then exist under
 5    there.  And I think that that's really the crux of it, which
 6    is, substantial compliance is, as in Rule 4, about actual
 7    notice; and I'm thinking in this instance, it quite obviously
 8    has been achieved.
 9              THE COURT:  What's your estimate when -- in how
10    long it will take you to get the service on Republic of
11    Turkey?
12              MR. TORRIJOS:  As of this morning, we just
13    finished obtaining a certified translated copy of the
14    Complaint, which is the first step of getting that required.
15    We're now getting bids for having, for sending that out.
16              So, our estimate would be within the next 45
17    days or so.  But we don't know when the Republic of Turkey,
18    of course, will respond to that.
19              THE COURT:  All right.  Obviously, the sooner you
20    get that party served, the sooner your status report will be
21    due.
22              MR. SOLTMAN:  Yes, Your Honor.
23              THE COURT:  All right, thank you.
24              MR. SOLTMAN:  I'll just -- one additional comment,
25    Your Honor.
```

1              The Court asked where -- or whether there

2     were cases supporting the cascading effect, and the statute

3     is very clear on that, B3 says:  If service cannot be made

4     under paragraphs 1 or 2, and if reasonably calculated to give

5     actual notice.

6              "Reasonably calculated to give actual

7     notice," is another way of saying "substantial compliance."

8     I think that's a fair interpretation.  And I think just

9     looking at the language of the statute, itself, B3 says:  You

10    can give substantial compliance notice.  But B2 does not have

11    that same language in it.

12             And so, B2 says:  By delivery of a copy to

13    the designated people.

14             And then B3 says:  If you can't do that and

15    if reasonably calculated to give actual notice, then you can

16    do it pursuant to B3.

17             So, I think that the language of the statute

18    itself is quite clear that a substantial -- which is the

19    position we took with regard to Straub -- that substantial

20    compliance is varied by the statute itself into B3 and

21    therefore shouldn't apply to B2 as well.

22             THE COURT:  All right.  Thank you.

23             The matter will be submitted.

24                        ~ ~ ~

25             (Proceedings concluded.)

```
 1                    C E R T I F I C A T E

 2     I hereby certify that the foregoing is a true and correct

 3     transcript of the stenographically recorded proceedings in

 4     the above matter.

 5     Fees charged for this transcript, less any circuit fee

 6     reduction and/or deposit, are in conformance with the

 7     regulations of the judicial conference of the united states.

 8

 9

10     _____        12/29/2010

11     Anne Kielwasser, CSR, RPR           Date
       Official Court Reporter
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| 1 |
|---|

**1** [2] - 9:19, 18:4
**10-5636** [1] - 3:5
**10-5636DMG** [1] - 1:11
**10:00** [1] - 3:1
**11** [1] - 4:4
**12/29/2010** [1] - 19:10
**1608(b** [1] - 16:19
**19** [1] - 4:5

| 2 |
|---|

**2** [2] - 16:20, 18:4
**2010** [2] - 1:18, 3:1
**213** [1] - 1:24
**213-217-5000** [1] - 2:6
**213-217-5010** [1] - 2:7
**213-229-9500** [1] - 2:12
**213-625-0248** [1] - 2:12
**25** [1] - 4:5
**25th** [1] - 2:11

| 3 |
|---|

**312** [1] - 1:23
**350** [1] - 2:11

| 4 |
|---|

**4** [2] - 7:5, 17:6
**432** [1] - 1:23
**45** [1] - 17:16

| 5 |
|---|

**50901** [1] - 1:22
**55/45** [1] - 9:23

| 6 |
|---|

**6** [2] - 1:18, 3:1
**60/40** [1] - 9:23
**644** [1] - 2:5

| 8 |
|---|

**894-2969** [1] - 1:24

| 9 |
|---|

**90-day** [2] - 12:6,

16:13
**90012** [1] - 1:24
**90017** [1] - 2:6
**90071** [1] - 2:11

| A |
|---|

**A.M** [1] - 3:1
**able** [3] - 10:6, 12:2, 16:13
**absolutely** [1] - 15:3
**accept** [3] - 5:19, 6:6, 8:7
**accomplished** [2] - 12:21, 12:22
**accordance** [1] - 16:21
**achieved** [1] - 17:8
**acquainted** [1] - 3:24
**action** [1] - 8:13
**actual** [8] - 8:18, 9:15, 16:8, 17:6, 18:5, 18:6, 18:15
**add** [1] - 4:15
**additional** [1] - 17:24
**address** [1] - 15:21
**addressing** [1] - 16:17
**adhere** [1] - 14:13
**adhered** [1] - 15:8
**affairs** [7] - 7:11, 8:22, 8:23, 9:2, 9:3, 10:14
**affect** [3] - 12:21, 12:24, 14:16
**Afghanistan** [1] - 10:5
**agent** [3] - 5:18, 6:5, 8:7
**agents** [1] - 10:20
**ago** [1] - 16:4
**agree** [5] - 4:11, 7:2, 8:3, 8:17, 13:18
**agreed** [1] - 11:14
**agreement** [4] - 5:17, 11:7, 13:2
**AKcourtreporting. com** [1] - 1:25
**al** [3] - 1:13, 3:6
**Alfredo** [2] - 2:4, 3:13
**alternatively** [1] - 17:3
**analyzed** [1] - 5:4
**Angeles** [4] - 1:18, 1:24, 2:6, 2:11
**Anne** [2] - 1:22, 19:11
**anne.kielwasser@ gmail.com** [1] - 1:25
**appearing** [1] - 12:17
**applicable** [1] - 16:22
**applies** [1] - 6:9
**apply** [1] - 18:21
**appreciate** [1] - 4:2

**approached** [1] - 5:15
**argue** [1] - 7:5
**arguing** [1] - 4:18
**argument** [7] - 4:21, 5:25, 6:17, 8:19, 9:14, 15:17, 16:17
**aside** [1] - 9:22
**assert** [1] - 5:3
**assume** [1] - 3:17
**astutely** [1] - 16:4
**attempting** [1] - 16:12
**authorized** [3] - 5:18, 6:5, 8:7
**Avenue** [1] - 2:11

| B |
|---|

**B1** [10] - 5:6, 5:8, 5:11, 5:16, 12:21, 13:1, 13:2, 13:11
**B2** [21] - 5:2, 5:4, 5:6, 5:8, 5:9, 5:12, 5:17, 6:4, 6:9, 6:18, 12:21, 13:12, 13:17, 13:18, 13:20, 13:22, 17:1, 18:10, 18:12, 18:21
**B3** [15] - 5:2, 5:4, 5:6, 5:9, 5:10, 12:21, 13:12, 13:17, 13:22, 17:4, 18:3, 18:9, 18:14, 18:16, 18:20
**ballpark** [1] - 8:3
**Bank** [7] - 10:16, 10:23, 10:25, 11:12, 12:9, 17:1
**basis** [1] - 3:23
**behalf** [2] - 1:8, 3:15
**BEHALF** [2] - 2:3, 2:8
**better** [1] - 10:8
**between** [7] - 4:18, 5:4, 8:24, 10:4, 11:7, 13:21, 14:7
**bids** [1] - 17:15
**briefly** [1] - 15:21
**broader** [1] - 14:19
**Brown** [4] - 2:5, 2:10, 3:11, 3:14

| C |
|---|

**CA** [2] - 2:6, 2:11
**calculated** [3] - 18:4, 18:6, 18:15
**CALIFORNIA** [1] - 1:2
**California** [2] - 1:18, 1:24
**cannot** [1] - 18:3
**careful** [3] - 12:20,

14:12, 14:21
**carefully** [1] - 15:8
**cascade** [1] - 5:7
**cascading** [3] - 12:24, 16:19, 18:2
**Case** [1] - 1:1
**case** [10] - 3:23, 4:12, 6:10, 8:22, 11:25, 15:9, 15:23, 15:25, 16:1, 16:14
**cases** [7] - 12:23, 12:25, 13:10, 13:13, 13:24, 14:14, 18:2
**CENTRAL** [1] - 1:2
**Central** [6] - 10:16, 10:23, 10:25, 11:12, 12:9, 17:1
**certainly** [1] - 15:13
**certified** [1] - 17:13
**certify** [1] - 19:2
**charged** [1] - 19:5
**Circuit** [2] - 4:12, 5:14
**circuit** [1] - 19:5
**circumstance** [14] - 7:14, 7:15, 8:5, 8:17, 9:12, 11:10, 11:13, 11:18, 11:23, 12:3, 14:11, 14:20, 14:22
**circumstances** [3] - 8:4, 9:14, 14:13
**cited** [2] - 4:25, 13:1
**civil** [1] - 3:5
**claiming** [1] - 8:18
**clear** [6] - 4:11, 4:12, 6:18, 12:11, 18:3, 18:18
**clearer** [1] - 4:16
**clearly** [1] - 5:2
**CLERK** [1] - 3:5
**close** [2] - 10:3, 15:9
**colleague** [1] - 10:2
**comment** [1] - 17:24
**communicate** [1] - 9:9
**communication** [1] - 9:8
**Complaint** [1] - 17:14
**completely** [1] - 17:2
**compliance** [18] - 4:19, 4:22, 5:11, 5:23, 6:13, 6:24, 7:3, 7:10, 7:20, 8:4, 9:15, 13:16, 17:4, 17:6, 18:7, 18:10, 18:20
**comply** [2] - 9:20, 15:13
**concept** [1] - 6:24
**concern** [1] - 7:13
**concerned** [1] - 11:19
**concluded** [1] - 18:25
**conference** [1] - 19:7

**conflate** [2] - 13:16, 13:23
**conflated** [1] - 13:23
**conformance** [1] - 19:6
**Congress** [16] - 6:18, 7:9, 7:16, 7:17, 8:6, 8:9, 8:16, 9:18, 9:19, 9:24, 10:9, 10:10, 10:12, 12:20, 14:10, 15:14
**congressional** [1] - 7:21
**Congressional** [4] - 12:13, 14:9, 15:7, 15:11
**consistent** [1] - 14:18
**context** [5] - 7:1, 7:2, 9:13, 10:7, 11:6
**contrary** [2] - 4:11, 7:5
**controlled** [1] - 11:11
**convention** [1] - 16:22
**Convention** [6] - 11:3, 11:6, 11:7, 11:21, 12:16, 16:7
**copy** [2] - 17:13, 18:12
**core** [2] - 7:21
**correct** [2] - 15:3, 19:2
**correctly** [1] - 10:18
**Cotchett** [1] - 3:22
**counsel** [2] - 15:25, 16:17
**counselor** [1] - 9:7
**countries** [1] - 16:10
**country** [1] - 11:22
**couple** [1] - 4:23
**course** [3] - 10:11, 11:2, 17:18
**COURT** [23] - 1:1, 3:5, 3:9, 3:12, 3:16, 3:20, 4:9, 5:3, 6:23, 8:12, 10:15, 10:18, 12:23, 13:3, 13:5, 13:9, 14:22, 15:16, 15:19, 17:9, 17:19, 17:23, 18:22
**Court** [8] - 1:23, 4:5, 4:24, 4:25, 12:12, 16:8, 18:1, 19:11
**Court's** [4] - 4:4, 6:1, 6:2, 11:25
**created** [1] - 12:20
**credence** [1] - 11:15
**crux** [2] - 4:3, 17:5
**CSR** [1] - 19:11

| D |
|---|

**Danoyan** [1] - 3:5

**Date** [1] - 19:11
**DAVOYAN** [1] - 1:8
**days** [1] - 17:17
**deal** [3] - 8:1, 9:25
**dealing** [9] - 4:12, 7:6,
7:10, 7:12, 7:23,
8:21, 8:23, 10:13,
10:15
**deals** [2] - 8:16, 8:22
**debatable** [1] - 9:23
**DECEMBER** [2] - 1:18,
3:1
**deciding** [1] - 9:25
**decision** [4] - 14:9,
14:10, 16:2
**deep** [1] - 8:23
**defendants** [6] - 1:14,
3:8, 3:11, 14:25,
16:7, 16:9
**DEFENDANTS** [1] -
2:8
**deference** [1] - 12:11
**definitions** [1] - 6:4
**delivery** [1] - 18:12
**Department** [1] - 9:7
**deposit** [1] - 19:6
**description** [1] - 5:1
**designated** [2] - 5:22,
18:13
**detailed** [1] - 11:21
**determine** [1] - 16:2
**determining** [1] - 12:4
**dictated** [1] - 15:14
**difference** [16] - 5:4,
5:5, 9:16, 9:19,
10:11, 10:12, 10:13,
12:10, 14:7, 14:21,
14:23, 15:6, 15:12,
15:23, 16:5
**different** [3] - 8:1,
8:25, 16:1
**dignity** [1] - 8:15
**diplomacy** [2] - 9:3,
9:4
**diplomatic** [1] - 9:6
**disagree** [2] - 12:12,
15:4
**disagrees** [1] - 4:6
**disclose** [1] - 3:21
**discretion** [1] - 10:7
**disjunctive** [2] -
16:21, 17:3
**distinction** [4] - 4:18,
13:21, 13:24
**DISTRICT** [2] - 1:1, 1:2
**diverge** [1] - 4:5
**divided** [1] - 5:2
**DOLLY** [1] - 1:4
**domestic** [1] - 8:2

**done** [3] - 6:21, 13:24
**doubt** [1] - 10:8
**down** [1] - 5:8
**due** [1] - 17:21

## E

**easier** [1] - 4:16
**economic** [1] - 7:13
**effect** [5] - 5:7, 6:10,
12:14, 13:13, 18:2
**effectuated** [3] -
11:10, 11:15, 12:5
**efforts** [1] - 11:20
**either** [4] - 14:23,
14:25, 15:6, 16:5
**Email** [1] - 2:13
**entirely** [2] - 11:11
**entities** [9] - 7:7, 7:23,
8:2, 8:25, 9:11, 9:25,
10:20, 11:11
**err** [1] - 10:9
**estimate** [2] - 17:9,
17:16
**et** [3] - 1:13, 3:6
**evade** [1] - 11:17
**evaporate** [1] - 15:25
**events** [1] - 10:12
**evidence** [2] - 6:4,
6:11
**exactly** [2] - 4:9, 14:14
**except** [1] - 12:10
**exist** [1] - 17:4
**expense** [1] - 16:9

## F

**fact** [2] - 9:2, 16:3
**fair** [4] - 7:8, 9:18,
11:24, 18:8
**fall** [1] - 5:11
**favor** [1] - 4:21
**Fax** [2] - 2:7, 2:12
**Federal** [1] - 1:23
**federal** [1] - 9:24
**fee** [1] - 19:5
**fees** [1] - 19:5
**Figueroa** [1] - 2:5
**finished** [1] - 17:13
**firm** [1] - 3:14
**firms** [1] - 3:23
**first** [3] - 13:11, 13:25,
17:14
**fit** [1] - 6:12
**fits** [1] - 6:19
**Floor** [1] - 2:11
**fly** [1] - 10:6
**foregoing** [1] - 19:2

**foreign** [21] - 7:7, 7:8,
7:11, 7:13, 7:23,
8:16, 8:21, 8:22,
8:23, 9:2, 9:3, 9:25,
10:1, 10:14, 11:12,
11:19, 12:19, 14:12
**forgetting** [1] - 16:20
**formalistic** [2] - 8:25,
14:3
**formalities** [1] - 9:4
**formality** [4] - 8:15,
8:24, 9:15, 10:9
**forward** [3] - 12:6,
16:3, 16:15
**FSIA** [4] - 7:6, 7:25,
9:13, 14:19
**fulfill** [1] - 6:4
**function** [2] - 7:21,
7:22

## G

**gained** [2] - 12:4,
12:17
**game** [1] - 11:4
**GARBIS** [1] - 1:8
**Garbis** [1] - 3:5
**Garretson** [1] - 4:25
**GEE** [1] - 1:4
**general** [2] - 8:7,
10:20
**given** [3] - 8:13, 14:20,
16:10
**government** [5] - 8:24,
9:24, 10:4, 10:5,
11:12
**government-owned**
[1] - 8:24
**governments** [7] - 7:8,
7:24, 8:17, 8:24, 9:9,
9:10, 10:1, 10:14,
11:13
**Grand** [1] - 2:11

## H

**Hague** [6] - 11:3, 11:6,
11:7, 11:21, 12:15,
16:7
**harm** [1] - 16:16
**Hearing** [1] - 1:17
**Henry** [1] - 2:10
**hereby** [1] - 19:7
**home** [1] - 16:9
**honor** [1] - 9:5
**Honor** [12] - 3:7, 3:10,
3:13, 3:19, 4:1, 4:3,
4:14, 15:20, 16:14,

16:25, 17:22, 17:25
**Honor's** [1] - 16:2
**HONORABLE** [1] - 1:4
**hopefully** [1] - 16:12
**house** [1] - 11:9

## I

**ignore** [1] - 15:10
**important** [2] - 8:12,
10:2
**impose** [1] - 10:10
**inconsistent** [1] - 5:20
**increasingly** [1] - 13:5
**incur** [1] - 16:8
**indicates** [1] - 12:1
**individually** [1] - 1:8
**individuals** [1] - 16:23
**inferring** [1] - 4:24
**instance** [1] - 17:7
**intended** [1] - 7:9
**intends** [1] - 14:19
**intent** [2] - 15:7, 15:11
**international** [1] -
16:22
**interpretation** [10] -
4:6, 5:16, 6:8, 6:17,
6:18, 7:9, 13:6, 13:8,
13:9, 18:8
**interpreted** [1] - 11:19
**invoke** [1] - 16:7
**involved** [3] - 3:23,
9:4, 12:3
**involves** [1] - 9:2
**involving** [1] - 9:3
**Iraq** [1] - 10:5
**issue** [3] - 8:20, 9:23,
11:2
**issues** [5] - 7:7, 7:10,
7:12, 10:14, 11:6
**itself** [4] - 6:22, 18:9,
18:18, 18:20

## J

**Joseph** [1] - 3:21
**JUDGE** [1] - 1:4
**judgement** [1] - 7:19
**judgment** [1] - 9:23
**judicial** [1] - 19:7

## K

**Kabateck** [2] - 2:5,
3:14
**keep** [1] - 16:20
**Kellner** [2] - 2:5, 3:14
**Kielwasser** [1] - 1:22,

19:11
**kind** [1] - 9:8

## L

**language** [9] - 5:14,
6:21, 12:13, 13:6,
13:9, 15:14, 18:9,
18:11, 18:17
**law** [2] - 3:14, 3:22
**lawsuits** [1] - 11:14
**least** [6] - 5:13, 5:15,
10:10, 12:6, 15:10,
17:1
**legislature** [1] - 6:8
**less** [3] - 5:9, 13:6,
19:5
**level** [2] - 8:23, 8:24
**line** [1] - 4:5
**list** [1] - 16:22
**LLP** [2] - 2:5, 2:10
**look** [4] - 5:6, 9:6,
9:13, 11:5
**looking** [2] - 6:16,
18:9
**Los** [4] - 1:18, 1:24,
2:6, 2:11

## M

**magic** [1] - 11:4
**managing** [4] - 5:18,
6:5, 8:7, 10:19
**manner** [1] - 8:1
**Marmolejo** [2] - 2:10,
3:10
**MARMOLEJO** [1] -
3:10
**matter** [4] - 4:4, 13:16,
18:23, 19:4
**matters** [2] - 9:2, 9:3
**Matthew** [2] - 2:10,
3:10
**Mayer** [2] - 2:10, 3:11
**mean** [2] - 12:25, 14:3
**method** [1] - 16:23
**middle** [1] - 16:11
**might** [2] - 8:4, 12:12
**mind** [1] - 6:12
**ministry** [1] - 7:13
**minute** [1] - 16:4
**mmarmolejo@**
**mayerbrown.com**
[1] - 2:13
**Mold** [1] - 6:19
**moment** [1] - 10:16
**MONDAY** [2] - 1:18,
3:1

**morning** [6] - 3:7, 3:9, 3:12, 3:13, 3:16, 17:12
**Motion** [1] - 1:17
**move** [2] - 12:5, 16:14
**moving** [2] - 3:8, 16:3
**MR** [21] - 3:7, 3:10, 3:13, 3:19, 4:1, 4:10, 5:5, 7:1, 8:14, 10:17, 10:22, 12:25, 13:4, 13:8, 13:10, 15:3, 15:18, 15:20, 17:12, 17:22, 17:24
**must** [8] - 4:24, 5:17, 5:18, 6:9, 6:18, 13:14, 13:25, 15:7

**N**

**nation** [2] - 7:13, 12:19
**national** [1] - 7:22
**nations** [3] - 11:8, 11:19, 14:12
**need** [2] - 5:23, 9:5
**Neil** [2] - 2:9, 3:7
**never** [1] - 6:12
**next** [1] - 17:16
**Ninth** [2] - 4:12, 5:14
**normal** [3] - 7:14, 8:17, 9:8
**normally** [2] - 9:1, 11:9
**North** [1] - 1:23
**note** [2] - 9:6, 10:15
**noted** [1] - 16:25
**nothing** [1] - 12:17
**notice** [10] - 8:13, 8:18, 8:19, 9:15, 16:8, 17:7, 18:5, 18:7, 18:10, 18:15
**numbers** [1] - 5:8

**O**

**obtaining** [1] - 17:13
**obviously** [10] - 4:10, 7:25, 8:19, 9:7, 9:20, 11:9, 12:15, 15:1, 17:7, 17:19
**OF** [4] - 1:2, 1:13, 2:3, 2:8
**office** [1] - 6:13
**officers** [1] - 10:19
**official** [1] - 19:11
**Official** [1] - 1:23
**ON** [2] - 2:3, 2:8
**once** [3] - 8:2, 12:16,

14:6
**one** [10] - 3:22, 6:21, 9:8, 9:10, 11:1, 11:22, 13:25, 14:24, 15:7, 17:24
**opportunity** [1] - 3:18
**oral** [1] - 16:17
**order** [3] - 12:1, 14:16
**ordinary** [1] - 10:11
**otherwise** [1] - 8:8
**ought** [1] - 7:17, 7:18, 8:5, 9:14, 9:16, 9:17, 10:9, 14:12, 14:21, 15:8, 15:13
**outlined** [1] - 15:25
**owned** [5] - 7:8, 7:23, 8:24, 10:1, 11:11

**P**

**page** [1] - 4:4
**papers** [2] - 4:15, 10:18
**paragraph** [1] - 4:5
**paragraphs** [1] - 18:4
**part** [1] - 10:8
**particular** [9] - 5:18, 5:21, 5:22, 6:9, 8:5, 9:9, 11:10, 12:13, 15:11
**particularly** [2] - 7:4, 14:20
**party** [1] - 17:20
**path** [1] - 12:11
**paths** [1] - 4:8
**people** [9] - 5:21, 5:22, 6:3, 6:9, 6:10, 6:11, 7:17, 7:19, 18:13
**perhaps** [1] - 7:12
**period** [3] - 12:6, 12:8, 12:9
**permitted** [7] - 4:19, 4:20, 4:22, 7:4, 7:5, 9:24, 13:17
**Phone** [1] - 1:24
**phrase** [1] - 17:3
**plaintiffs** [6] - 1:11, 3:15, 6:3, 12:7, 16:6, 16:11
**PLAINTIFFS** [1] - 2:3
**play** [1] - 11:4
**point** [6] - 4:12, 4:15, 12:16, 12:22, 15:21, 16:18
**pointed** [1] - 16:4
**policy** [3] - 15:22, 15:24, 16:16
**position** [1] - 18:19

**precise** [1] - 11:22
**presently** [2] - 16:8, 16:11
**PRESIDING** [1] - 1:4
**presumably** [2] - 12:7, 12:19
**principal** [1] - 3:22
**proceedings** [2] - 18:25, 19:3
**Proceedings** [1] - 1:17
**process** [3] - 5:19, 6:6, 8:8
**properly** [1] - 12:4
**proposition** [1] - 14:15
**protections** [2] - 11:20, 12:18
**providing** [1] - 16:23
**pure** [2] - 5:14, 6:8
**purpose** [2] - 7:25, 14:4
**purposeful** [1] - 14:5
**pursuant** [2] - 11:3, 18:16
**put** [1] - 11:5

**Q**

**questions** [1] - 8:16
**quite** [4] - 11:21, 11:22, 17:7, 18:18

**R**

**rationales** [3] - 15:22, 15:24, 16:16
**read** [1] - 10:18
**reading** [4] - 4:10, 4:16, 4:17, 9:18
**real** [1] - 4:3
**reality** [1] - 16:10
**realize** [1] - 12:12
**really** [12] - 4:14, 6:3, 7:20, 12:1, 14:3, 14:20, 14:23, 15:22, 15:23, 15:25, 16:15, 17:5
**reasonably** [3] - 18:4, 18:6, 18:15
**record** [1] - 3:21
**recorded** [1] - 19:3
**recuse** [1] - 3:24
**reduction** [1] - 19:6
**refer** [1] - 12:23
**regard** [9] - 7:4, 10:22, 10:23, 10:24, 10:25, 11:1, 16:18, 17:1,

18:19
**regulations** [1] - 19:7
**relate** [1] - 7:10
**relating** [4] - 8:16, 9:10, 10:5, 10:14
**relationships** [1] - 10:3
**report** [1] - 17:20
**Reporter** [2] - 1:23, 19:11
**Reporter's** [1] - 1:17
**Republic** [6] - 3:6, 12:2, 12:8, 16:12, 17:10, 17:17
**REPUBLIC** [1] - 1:13
**require** [1] - 5:20
**required** [2] - 9:20, 17:14
**requirement** [1] - 5:10
**requirements** [1] - 5:9
**requires** [2] - 4:23, 8:3
**requiring** [1] - 16:6
**respond** [1] - 17:18
**review** [1] - 3:18
**roles** [1] - 6:12
**Room** [1] - 1:23
**RPR** [2] - 1:22, 19:11
**Rule** [2] - 7:5, 17:6
**rule** [1] - 14:24
**ruling** [1] - 3:18
**runs** [1] - 5:6

**S**

**salient** [1] - 15:21
**satisfy** [4] - 13:1, 13:11, 13:12
**scope** [1] - 4:6
**second** [1] - 6:15
**section** [1] - 16:19
**sections** [1] - 16:19
**sending** [1] - 17:15
**sends** [1] - 9:7
**sense** [3] - 6:7, 14:3, 14:23
**serve** [9] - 5:21, 6:18, 6:20, 11:3, 11:25, 12:7, 12:8, 12:15, 16:12
**served** [7] - 6:3, 6:11, 6:12, 11:24, 14:25, 16:13, 17:20
**Service** [2] - 11:21, 12:15
**service** [20] - 5:2, 5:19, 6:6, 6:9, 7:4, 7:16, 7:18, 8:8, 11:5, 11:9, 11:14, 11:18, 12:4, 13:17, 13:18,

13:20, 16:24, 17:10, 18:3
**serving** [2] - 6:13, 16:9
**several** [1] - 13:24
**side** [1] - 10:9
**sides** [1] - 3:17
**similarly** [1] - 1:9
**simply** [1] - 16:23
**situated** [1] - 1:9
**socialize** [1] - 3:25
**Soltman** [2] - 2:9, 3:8
**SOLTMAN** [17] - 3:7, 3:19, 4:1, 4:10, 5:5, 7:1, 8:14, 10:17, 10:22, 12:25, 13:4, 13:8, 13:10, 15:3, 15:18, 17:22, 17:24
**somewhat** [2] - 4:23, 5:9
**sooner** [2] - 17:19, 17:20
**sort** [2] - 5:7, 10:6
**South** [2] - 2:5, 2:11
**specific** [5] - 5:17, 7:2, 7:16, 7:18, 16:23
**specifically** [2] - 5:21, 10:24
**Spring** [1] - 1:23
**start** [1] - 3:20
**State** [1] - 9:7
**States** [3] - 7:11, 10:4, 10:20
**STATES** [1] - 1:1
**states** [1] - 19:7
**status** [1] - 17:20
**statute** [13] - 5:6, 5:14, 5:21, 6:22, 6:25, 14:2, 14:17, 15:15, 16:24, 18:2, 18:9, 18:17, 18:20
**statutory** [4] - 6:8, 6:16, 6:17, 12:18
**stay** [3] - 12:6, 16:1, 16:13
**stenographically** [1] - 19:3
**step** [2] - 6:15, 17:14
**steps** [3] - 4:23, 13:14, 13:15
**Straub** [7] - 4:6, 4:10, 4:17, 5:1, 5:15, 18:19
**Street** [2] - 1:23, 2:5
**strict** [3] - 5:9, 5:16, 6:16
**stricter** [1] - 7:9
**stringent** [2] - 13:6, 13:7
**structure** [2] - 5:13,

4

14:4
**submitted** [1] - 18:23
**subsection** [1] - 16:20
**substantial** [17] - 4:18,
   4:19, 4:22, 5:10,
   5:23, 6:13, 6:24, 7:3,
   7:19, 8:4, 13:16,
   17:4, 17:6, 18:7,
   18:10, 18:18, 18:19
**sufficient** [2] - 8:5,
   16:15
**suggest** [2] - 5:15, 6:3
**suggested** [1] - 16:14
**suggestive** [1] - 15:10
**suggests** [2] - 6:2,
   12:13
**supplied** [1] - 10:5
**supporting** [2] -
   14:15, 18:2
**Surat** [6] - 10:16,
   10:24, 10:25, 11:1,
   11:12, 12:9

## T

**tentative** [6] - 3:18,
   4:4, 4:23, 6:2, 12:1,
   17:1
**territory** [1] - 4:13
**THE** [23] - 2:3, 2:8,
   3:9, 3:12, 3:16, 3:20,
   4:9, 5:3, 6:23, 8:12,
   10:15, 10:18, 12:23,
   13:3, 13:5, 13:9,
   14:22, 15:16, 15:19,
   17:9, 17:19, 17:23,
   18:22
**themselves** [1] - 9:10
**therefore** [1] - 18:21
**thinking** [3] - 4:24,
   5:1, 17:7
**three** [3] - 14:1, 14:6,
   14:8
**titles** [1] - 5:22
**today** [1] - 16:2
**together** [1] - 11:14
**took** [1] - 18:19
**TORRIJOS** [3] - 3:13,
   15:20, 17:12
**Torrijos** [2] - 2:4, 3:14
**transcript** [2] - 19:3,
   19:5
**Transcript** [1] - 1:17
**translated** [1] - 17:13
**true** [4] - 6:23, 10:22,
   10:23, 19:2
**try** [1] - 12:7
**trying** [1] - 6:16
**TURKEY** [1] - 1:13

**Turkey** [9] - 3:6, 7:14,
   10:2, 11:25, 12:2,
   12:8, 16:12, 17:11,
   17:17
**Turkish** [2] - 9:7, 10:4
**two** [9] - 10:20, 13:23,
   13:25, 14:1, 14:7,
   14:24, 16:7

## U

**unavailable** [1] - 17:2
**uncertain** [1] - 4:13
**under** [13] - 5:10, 7:5,
   11:20, 12:15, 13:17,
   13:18, 13:20, 13:22,
   16:24, 17:4, 18:4
**underlying** [2] - 9:13,
   15:22
**United** [3] - 7:11, 10:4,
   10:20
**UNITED** [1] - 1:1
**united** [1] - 19:7
**unnecessary** [1] -
   16:10
**up** [1] - 5:8
**upset** [1] - 12:19

## V

**valor** [1] - 10:8
**varied** [1] - 18:20
**vary** [1] - 11:22
**versus** [3] - 3:6, 4:25,
   7:20
**view** [4] - 4:22, 10:10,
   10:19, 14:19
**violence** [3] - 6:7,
   6:21, 6:24
**vitally** [1] - 10:2
**vS** [1] - 1:12

## W

**wartime** [1] - 10:3
**waterfall** [3] - 5:7,
   12:20, 14:16
**ways** [1] - 9:9
**whatsoever** [1] -
   12:10
**whole** [2] - 6:23, 7:25
**wise** [1] - 14:8
**word** [2] - 7:17, 8:6
**wrapped** [1] - 9:9